And now, if everyone's ready, I'll call the next case, Caradigm v. PruittHealth. May it please the Court, Tom Riley for PruittHealth. The judgment in this case is contrary to settled law in three respects. First, on contract damages, the District Court misconstrued the contract and deviated from black-letter law requiring Caradigm to show that it likely would have reached first productive use, a contractual condition to future subscription payments, before recovering those payments as damages. The Court conflated liability with damages and improperly precluded Pruitt from challenging Caradigm's ability to reach first productive use, resulting in millions in unwarranted contract damages. Second, on prejudgment interest, the Court allowed $3.7 million in contract interest despite its own construction that the contract did not authorize it here. The Court also allowed interest to be compounded monthly, even though the contract says nothing about compounding. Third, the Court disregarded settled Georgia law by allowing stubborn litigiousness damages of $2.3 million for nothing more than breaching the contract, and by refusing to instruct the jury that a bona fide dispute as to damages precludes fees under the statute. The Court improperly took this issue from the jury, and because it is such a unique and important issue of Georgia law, I'll focus on this fees issue first. OCGA 13611 provides that fees generally are not recoverable as part of the damages, with limited exceptions. This statute is in derogation of common law, and it must be strictly construed against the award of fees. The Georgia Supreme Court repeatedly has held that a mere breach of contract or refusal to pay without suit is not sufficient to award fees. This is not a loser-pays statute, and it has never been so construed. For the Court of Appeals in Georgia, if a genuine dispute exists, whether of law or fact, on liability or amount of damages, fees are not authorized, and a genuine or bona fide dispute is a reasonable question of law or a reasonable issue of fact, even if it is not ultimately accepted by the trial court or jury. Despite this law, the Court failed to accurately charge the jury by removing the issue of a bona fide dispute as to damages. The Court recognized this critical issue at the charge conference, stating this is what we call in the judges' circles reversible error, if I'm wrong. The Court actually acknowledged that the law was on Pruitt's side, but refused to charge based on its factual conclusion that no bona fide dispute as to damages existed because none was communicated to Carradine prior to suit. First, the finding that a bona fide dispute does not exist can only be made by the jury. Second, the law does not require the communication of a bona fide dispute before litigation, but only the existence of such a dispute. Georgia courts regularly consider evidence of communications and events after the filing of suit in determining this question. Pruitt here presented ample evidence disputing damages through cross-examination of Carradine's witnesses. This is Beverly Martin. I think you said Georgia law is clear, but it looked like to me the Georgia Court of Appeals has cases that absolutely contradict each other on whether a dispute about damages is enough to stave off a claim for stubborn litigiousness. Am I just missing something? No, I wouldn't say you're missing something, Your Honor. There is some language in a certain line of Georgia Court of Appeals cases that does talk about the issue only of liability and doesn't address the issue of damages, or in some cases even suggests that a dispute as to damages is insufficient. And these are cases that are in a line where the defendant changes its story on liability at trial, gets all the way up to trial and then concedes on liability and tries to dispute damages to avoid an award of fees. That's a distinguishable line of cases from the situation that we have here. And there are also a brand of cases called the so-sue-me cases, where there is a defendant who acknowledges its liability all along and says, if you want your money, you're going to have to sue me for it. Counsel, Judge O'Scanlan, where does the Brown case from the Georgia Supreme Court fit in your analysis? So the Brown case, Judge O'Scanlan, is simply not applicable to this case. In the Brown case, the Georgia Supreme Court, the sole issue before the court and the sole issue that it decided was that 13611 does not apply to appellate proceedings. And in fact, the court in that case stated that the statute only allows fees under very limited circumstances and that a litigant is not subject to being penalized by the award of fees whenever it loses its case. So Brown didn't address this issue of a bona fide dispute as to damages versus liability. And the cases that I alluded to earlier and upon which Karadine relies, these change in the story on liability at trial cases are easily distinguishable. So to your question, Judge Martin, we believe that the Georgia Supreme Court's precedent on this and the Court of Appeals cases that actually address this issue are clear and are consistent with our position. But certainly if this court has any question about this important issue of Georgia law, you have the authority to certify it to the Georgia Supreme Court. And if you see a conflict, we urge you to certify the question. So this is Judge Newsom. Just to sort of put a bow on this, I agree with Judge Martin that there are Court of Appeals cases going both ways and I agree with Judge O'Scanlan that there are certainly at least dicta in Brown v. Kent that says that, you know, ties stubborn litigiousness specifically to a controversy or dispute regarding liability. And, you know, as we on the 11th Circuit sometimes say about U.S. Supreme Court dicta, there are dicta and then there are dicta from the U.S. Supreme Court, whereas here we're sort of making an eerie guess. Why wouldn't we say there are dicta and then there are dicta from the Georgia Supreme Court? And as Judge O'Scanlan says, it seems pretty clear what the Georgia Supreme Court said about this issue. Whether it was like squarely before the court or not, the court said something meaningful about it. Why wouldn't that, as the district court said, sort of tip the scales? Well, Your Honor, Judge Newsom, the issue was not even presented in the case, in the Brown case. And so while there may be dicta that could be read out of context that focuses solely on the issue of liability, if the issue of damages and the dispute of the damages wasn't in the case, then it's not the kind of dicta that this court ought to give any deference to because, of course, courts only decide the issues that are presented to them in the cases at hand. And it was a very narrow issue that was presented in Brown, and it was solely the question of whether 13611 applies to appellate proceedings. So I do want to free you up to discuss the other issues, but you said just a minute ago, sort of offhandedly, you said, I think the Georgia Supreme Court precedent in cases that have clearly addressed this issue is clear. What's the Georgia Supreme Court case you're referring to? I might have just missed it. No, Your Honor, there are a number of Supreme Court cases, including the General Refractories case, 240 Georgia 228, that stands for the proposition that a mere breach of contract or refusal to pay without suit is not sufficient to award fees. That's also set forth in the McKenzie v. Mitchell case, 123 Georgia 72. And the fact that simply losing the case does not warrant an award of fees under this narrow statute goes all the way back to the Ferdmenge's case at 117 Georgia 400. And so our position is that these Georgia Supreme Court cases, which remain good law, demonstrate that the refusal to pay an amount, even if that amount is later shown to be due, doesn't justify an award of fees. Now, I want to move for just a moment to the interest issue. There are two fundamental issues with the Judgment's Interest Award. First, it was compound interest, which is not permitted by the contract. And second, the contractual provision didn't allow interest at all because it doesn't apply to lost profits damages. Can I ask you, Judge Newsom, just a quick question about your compound interest argument? Can you tell me, is there a place other than a footnote in your trial brief that you raised this to the district court? So we raised it explicitly in the footnote in our trial brief prior to trial, Judge Newsom. We believe that we adequately encompassed the issue in our pretrial order with the statement that normal damages principles would apply at trial as the district court held in its summary judgment order. And the issue was fully briefed by the parties in the post-trial motions. And it's important to remember here that this is an issue of law. It's a pure issue of law. It's not dependent upon facts or the development of the evidence. And it's a $900,000 issue. So it's an important issue that the court can and should address here. We do believe that we adequately raised it. But even if one were inclined to question that, the court has discretion to consider the issue. And because it's a pure legal issue and such a significant issue, we think that it's appropriate to do so. The Nunes case in the Georgia Court of Appeals reversed the compound interest judgment as unauthorized under substantially identical language to our language in this contract. And under Georgia law, you just can't get interest on interest without explicit language authorizing it. So that's a fundamental principle of contract law. And, indeed, here we think the court should have granted judgment as a matter of law based on its construction of the contract on the interest issue. My recollection was that you, I know you know the record better than I do, but you cross-examined Kerry Dimes' expert on the use of compound interest during the trial. We did. Yeah. And then the pretrial order refers to normal damage principles, right? Yes. Yeah. So let me, you just referred to this. The remedy, if I were to agree with you about that, what's the remedy? A whole new trial or a separate damages calculation done on law? Or what do you think is the remedy? There was a mistake. We believe that actually judgment as a matter of law can be granted to Pruitt on this issue based on the construction of the contract that interest is only available for late amounts, which the court itself ruled here these were not late amounts and that there was no invoice for these amounts. But on the compounding issue, it's certainly possible for the court to just deduct that amount from the judgment. However, here it's intertwined with the issue of attorney's fees. The reality is that with the $900,000 issue on the interest compounding alone, that in and of itself demonstrates a bona fide dispute as to damages. And so we think that remanding for a new trial, vacating both of those components of the judgment and remanding for a new trial would be appropriate under the circumstances. Thank you. Counsel, your time has expired. Thank you. Good afternoon and good morning, Judge O'Scanlan. This is Chris Giovinazzo on behalf of Plaintiff Paradigm. I'd like to start by addressing the tension that is being alleged between Georgia case law on stubborn litigiousness. The only case cited by either side that addresses the jury instruction for stubborn litigiousness is Daniel v. Smith. It's a court of appeals case. Daniel affirms the jury instruction given here virtually verbatim and cert was denied. It also holds expressly, quote, a jury may award attorney's fees if there is no controversy as to liability, even if there is a bona fide dispute as to damages. And we cite maybe five other cases that state as none being reversed. So what I heard from Pruitt, and this was in their briefs as well, is that these cases are distinguishable because they involve defendants who steadfastly denied liability right up to trial when they conceded it. And that distinction is objectively false. Daniel himself in that case contested liability before trial, during trial, and even on appeal. So did the defendants in the Kroger and Delta cases that we cited. So Pruitt has no other answer, and that means that when Pruitt is making a legal challenge to the jury instruction and saying it is legally incorrect that a jury can award stubborn litigiousness fees if there is a bona fide dispute as to damages, that is clearly not Georgia law. And then you get to the Georgia Supreme Court cases. It's not just Brown, but it's also the Couch case in which the Georgia Supreme Court has said the jury may award fees for stubborn litigiousness absent a bona fide dispute on liability, period, with no mention of damages. Now, I'll set aside whether that's really dicta, but even if it were, it's Pruitt's theory that the highest Georgia court twice just made a mistake when articulating the basic legal rule on stubborn litigiousness. I mean, you know, a federal court is trying, of course, to rule on Georgia law as the Georgia courts would, and that's pretty powerful evidence. The fact of the matter is Georgia courts have repeatedly awarded or allowed the award of stubborn litigiousness fees even when there was a bona fide dispute as to damages. And, in fact, the Supreme Court of Georgia has done that in the Forsyth case that we cited. That case, you can read it. The court affirms the dismissal of plaintiff's damages claims. He loses on damages, and yet it also allows a fee award for stubborn litigiousness. Now, if the rule were, as Pruitt would have it, that a bona fide dispute on damages means you can never award stubborn litigiousness fees, that case cannot be explained. And maybe the larger point here is that what Pruitt is sort of making it sound like is that this district court instructed the jury, you must ignore damages when you decide if Pruitt was stubborn litigious, but that's not true. What the court did is it simply did not instruct that a bona fide dispute as to damages automatically defeats stubborn litigiousness. So it left to the jury to decide what was stubborn litigious. And, in fact, in Pruitt's closing, and you can see this on page 837 of the transcript, this is in closing. Pruitt argued, quote, there was a bona fide dispute, and Pruitt did not believe that it owed what Carradine was claiming. So there is no, at best what you could say about this tension in the case law is that depending on the facts of the case, a different phrasing of the stubborn litigiousness jury instruction is okay in Georgia, and then you are in the world of questioning, of asking only whether there was an abuse of discretion. Now, the instruction issued here is particularly correct because the fact is that Pruitt literally put on no evidence, no evidence of a bona fide dispute as to liability or damages prior to Carradine's suing, and it's no longer disputed that that is the question. It's about a bona fide dispute before the lawsuit, and Pruitt put on no evidence of that. It didn't put on evidence of communicating a dispute as to liability or damages, and it didn't put on even evidence of a secret dispute inside its head that it didn't communicate that say, well, we didn't know what the damages were, we couldn't believe that Carradine was claiming such and such for damages. No evidence. And remember, the jury instruction is not decided until after the evidence is in. So we get to that point, and then there are some basic rules. Basic rule number one is that the jury instruction should be tailored to the evidence, and basic rule number two is that even an allegedly erroneous jury instruction isn't cause for reversal unless there was prejudicial harm. And so, yes, it is true that in Georgia, it is uniquely for the jury to decide a fee award under stubborn litigiousness, but all that means, and it's from the Covington case, is that the court may not grant summary judgment in favor of the plaintiff's stubborn litigiousness fees claim. And, of course, that's not what happened. And the other thing about that is this rule in Georgia that the jury must decide is a longstanding rule. It didn't come up in Covington. In fact, the Daniel case, again, that's the one that affirmed verbatim our jury instruction. Counsel, I'm sorry. I'm just going to stop you if I can. This is Judge Newsom. I'll speak only for myself. I'm a little bit more troubled on your side of the V with the compound interest issue. I don't want to cut off any questioning that my colleagues may have about the stubborn litigiousness award, but I'd like at some point to hear your position on the substance of the compound interest issue. I realize I raised the fact that there may be a forfeiture, but if we get to the substance of it, what your position is. The way I read Georgia Supreme Court cases going back some time is that compound interest is disfavored, and the way I read the statute, it sounds to me like you need to have expressed in writing in the written contract a preference for compound interest. Thank you, Your Honor. Of course, I want to address what is of interest to you. Had Pruitt raised the issue below, we would have argued that the language in our contract, which applies interest to any late amounts, means interest on interest, which is what our expert testified, because after a month of not paying the interest, that interest itself becomes a late amount. This is important. Pruitt's own Hofton case itself says that whether interest on interest allowed is a fact question, depending on the language of the contract and the party. That's the case they cite. They also cite the Nunes case. It's very important here that the Nunes case imposed interest on, quote, past due fees. So the interest that is incurred on a past due fee is not itself a fee, whereas any late amount encompasses compound interest. So we didn't get a chance to litigate those factual and contractual interpretation issues because of the waiver. But, you know, at the end of the day, the waiver is clear. I mean, they didn't challenge compound interest in the pretrial order. They didn't object when Carradine introduced evidence of compound interest. They did not raise the challenge in the motion for directed verdict. And while Pruitt has cases, of course, where your court has, in its discretion, addressed a waived issue, those are all cases that none of them are trial cases. They are summary judgment cases, and even one of their cases, the Blue Martini case, says that the Eleventh Circuit is more likely to discretionarily review a waived issue when it happened in summary judgment rather than after a trial where there's more strain on judicial resources to go back and where it could have been a fact issue. So, you know, this is not an issue of general import. It's a contract-specific issue. It certainly doesn't shock the conscience because Georgia law permits contracting parties to agree by contract to compound interest. And, in fact, also to interest rates much higher than the one in this case. And the statute for that is OCGA 742B. You know, this isn't a due process or a constitutional challenge, as in Pruitt's case. This is a challenge that could have been argued and should have been argued, if at all, in the district court, based on this contract language and the party's understanding. Counsel, Judge O'Scanlan, what is your response to Mr. Riley's point that, yes, it was raised in the footnote in the trial brief? Well, so the trial brief is filed a week before trial, after not only the parties had submitted the pretrial order, but the pretrial order had been finalized with the district court's adjustments for issues raised at the pretrial conference. So, and again, it's a footnote, and there's the case law in the 11th Circuit is pretty strong that a footnote generally doesn't preserve things, but certainly a footnote, I mean, the footnote doesn't amend the pretrial order just by fiat. And then we get to trial, and the evidence, our expert, Devin Rich's expert, is up there testifying about compound interest and how to calculate it with no objection. You know, if they thought it was illegal, they should have said, Your Honor, this evidence should be excluded. Then we get to, after the evidence, the motion for judgment as a matter of law, and it's not mentioned again. So that's a very thin reed for a claim that it hasn't been waived. May I just ask- What about Judge Martin? Oh, I'm sorry. Didn't mean to speak over someone. This is Beverly Martin. I just had a quick question. And, you know, I don't know whether we'll need to know this or not, but just wondering if we say it should have been simple interest and not compound interest, would the interest award would have been $2.8 million? Or is that an accurate- I don't know the number offhand, but I know that there's a footnote in Pruitt's brief that has to the penny what the difference would be. I mean, it's just straight math. And so no need for new proceedings in the district court. It would simply be an instruction to drop that amount from the judgment. And with respect, I don't understand why the compound interest would bootstrap a reason to retry stubborn litigiousness. And I should mention stubborn litigiousness has this problem of waiver as well. I mean, the pretrial order literally includes no description by Pruitt of what its defense is. It doesn't say here with the bona fide dispute, here with the bona fide dispute of liability or damages. It says nothing. In fact, Pruitt itself moved pretrial to exclude all evidence of the reasons it terminated. So then to turn around and say that the court is the reason it didn't do that is a little-it doesn't make much sense. And the-I'm sorry. You had another call. I didn't factor that in. Sorry. I'll wait on that one. So, you know, I mean, there is no evidence of a bona fide dispute before the litigation. There is no evidence. What happened was the most classic stonewalling you can possibly imagine. They declared-Pruitt declared they would not proceed with the contract or pay anything further without offering any reason for why. Either the contract allowed it or Karadime had done something wrong. Karadime sends a letter and says you can't do that. You will owe all fees in the contract. Pruitt ignores that letter. It ignores emails and phone calls. And during Pruitt's pure period, the period where after Karadime said, hey, you breached, during its 90-day pure period it ignored all invoices. So it is crystal clear that there wasn't a pre-lawsuit bona fide dispute as to liability or damages. And by the way, it's also crystal clear that sending on the interest issue that an invoice that says with capital letters at the top, invoice for the damages amount would also have been futile. They've already told Karadime they're not going to pay. They've already told Karadime they've already ignored Karadime's demand. And that's exactly what the futility doctrine is for. I mean, you know, Pruitt's brief says the futility doctrine doesn't apply to contractual notice requirements, and that's a truly baffling argument. Of course it does. I mean, union fire is one of many cases. Union fire case is a case where someone calls their insurer and says I was in an accident. You're going to owe me insurance coverage. And the categorical response from the insurer is we're not going to pay. And then when the injured party sues, the insurer says, ha-ha, you didn't file a written proof of loss. Well, the court says, well, the written proof of loss was made futile by your categorical denial that you would pay. And that is the purpose of the futility doctrine is to say the formalistic demand is not required when you already know that they won't pay. And I will say the point of the invoice is not to trigger interest. That's a circular argument. The point of the invoice is to get Pruitt to pay. And so if they were right that, well, it wasn't futile because then you would trigger interest, that's like saying, well, every proof of demand isn't futile because, C, you wouldn't waive it. I mean, that's not the point. The point is to get them to pay, and there's literally no evidence that an invoice would have changed their behavior. And the final thing I would say is Karatime's interest claim is a prejudgment interest claim under OCGA 13613, which says the jury may award interest on a breach of contract claim. It may award it. And then 742 says what's the interest rate? It's either the Georgia legal interest rate default of 7% or the interest rate in the contract. And so this is just a prejudgment interest claim. It's a different category of damages than the entire amount. We weren't awarded something beyond a reasonable value of the contract. We got the entire value of the contract as contract damages. And then, in addition, we got prejudgment interest. And the reason the interest rate is high is because the parties agreed by contract to that interest rate. Thank you, Your Honors. Thank you. Tom Riley for the appellant, Pruitt Health. Let me address first this interest issue. And counsel for Karatime just said during the course of his argument, it's just straight math. And that's the point when it comes to this waiver question. Fundamentally, it's just a question of math, and it is a question of Georgia law about whether compound interest is allowed or is not allowed. And it's not something that is a question of ambush or surprise or that they did not know was at issue during the trial. Everybody knew it was an issue, and it's a pure legal issue that can be decided by the court and can be corrected by the court. And on the question of not objecting... Sorry, just quickly, this is Judge Newsom. So, but you're not suggesting that it's somehow jurisdictional or non-waivable. The fact that it's simply a matter of arithmetic doesn't mean that you can't forfeit it by not adequately raising it, right? That's right, Your Honor. Our point is that we did adequately raise it, and we did so prior to trial, and we did so during trial. And everybody had every opportunity to address the issue, and that the parties fully briefed the issue, and the district court decided it. So, how did you do it during trial, just so I'm clear? I know that Judge Martin suggested earlier, and she's got a better handle on the record than I do, that you cross-examine Genworth's expert. But when the expert gets up there and starts talking about compound interest, did anybody ever raise his hand and say, what's he talking about? Everybody knows this isn't permitted under Georgia law. No, Your Honor. And here's the reason why. Here's the issue with failure to object to Carradine's expert's testimony on this point. It is how he did his calculation. There's no dispute about that. He used compound interest. We cross-examined him on the point that he shouldn't have used compound interest, because nowhere in the contract does it say anything about compounding. And, in fact, this Nunes case from the Georgia Court of Appeals at 307 Georgia, at 355, reversed the judgment for compound interest as unauthorized under substantially identical language. But we didn't object to the expert's testimony on this, because it is how he did it. It was legally wrong, but it was the basis for his opinion. So it wasn't inadmissible. It was just incorrect to do it that way, which is why we pointed it out on cross-examination. So that's how we raised it at trial and how we, again, raised it. And we didn't raise the Rule 50 motion at the conclusion of the evidence, again, because it isn't a question of the sufficiency of the evidence. It's a question of is it proper or permissible under Georgia law to award compound interest under these circumstances and under this contract language or not. And then we did very clearly raise it in the post-trial motions and briefing, and everybody said everything that they needed to say on that issue. So this court would not be going out on a limb by deciding the issue and, of course, has the discretion to decide it, even if it were concerned that the issue had not been adequately raised in the trial court. And, again, to the question of how much are we talking about here, this is a $900,000 issue just on the compounding issue for the interest. It's a very significant issue. So moving on now to the attorney's fees question. The cases that are relied upon by Karadime from the Georgia Supreme Court, not one of them deals with this question of a bona fide dispute as to damages on the stubborn litigiousness question. We already talked about Brown v. Kent, the applicability of the statute to appellate proceedings. The other cases that are relied upon by Karadime are equally distinguishable. One of them has to do with the availability of the statute to a sovereign immunity, whether sovereign immunity barred a claim under the statute. That's the Couch case that cites Brown in a footnote. And then the Forsyth County v. Martin case doesn't address the liability v. damages issue at all. It simply affirmed the trial court's refusal to grant a directed verdict on a 13611 claim where it was seeking to re-litigate an issue that had been raised in a prior administrative action. There was, in fact, no damages claim in the Forsyth County case other than the 13611 claim. So there was no reason for the court to be talking about this very issue of the difference between a dispute as to damages and a dispute as to liability. And the Daniel v. Smith case, the Georgia Court of Appeals case that they rely upon, has to do with the allocation of fees among different causes of action, among separate claims. And that was the holding of that case is that you have to allocate the fees to claims which were successful v. claims which were unsuccessful, not the issue that's presented here. And, in fact, Daniel was later cited by the Court of Appeals in Anderson v. Case, which we include in our brief, which reiterated the law that attorneys' fees are unauthorized under 13611 if the evidence shows that a genuine dispute exists, whether of law or fact, on liability or amount of damages, or on any comparable issue. And there was evidence here of a bona fide dispute as to damages. We introduced evidence through the cross-examination of Carradine v. Smith. Counsel, your time has expired. Sorry, I'm sorry. I didn't understand what you said. I'm sorry. I think that was the courtroom deputy jumping in on the time question. Yeah, I don't know what she said about the time question. I'm happy to stop now and to rest on our briefs on the other issues. I'm also happy to answer any lingering questions that the Court has. The point that I was just making was that Georgia law is clear that you can dispute damages through cross-examination of witnesses. The Horton and French cases make that clear. French v. Duleshaw, in particular, is a very similar case where the Court overruled a 13611 claim because damages were disputed. A reasonable person could calculate the damages differently, and that's exactly the case here. They hired an expert who did a 30-page damages report that relied upon various assumptions, including saved expenses and the discount rate to use for discounting to present value. All of these things were assumptions. Thank you. We've got your argument. Thank you. Unless one of my colleagues has another question for you. All right. Thank you. That concludes our arguments for this morning. The Court will reconvene tomorrow morning at 9 a.m. Eastern Time.